IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00019-CMA

JOHN WARRENER,

      Applicant,

v.

ANGEL MEDINA, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

_____

ORDER DISMISSING PETITION FOR HABEAS CORPUS
_____

CHRISTINE M. ARGUELLO, District Judge

      The matter before the Court is an Application For A Writ Of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Doc. # 1).  The Court has determined that the Application

can be resolved on the parties' briefing and that no oral argument or evidentiary hearing

is necessary.[1]

## I. BACKGROUND

      On July 15, 2005, a jury in Adams County, Colorado District Court Case No.

04CR1621 found Applicant guilty of first degree murder–after deliberation, first degree

murder–felony murder, and second degree burglary.  On direct appeal of Applicant's

conviction, the Colorado Court of Appeals summarized the underlying facts and

proceedings as follows:

      Defendant and the victim were involved in an intimate relationship
    beginning in 2001. In June 2004, the victim's family requested that police

_____

[1]*See* 28 U.S.C. § 2254(e); Fed. R. Governing Section 2254 Cases 8(a).

conduct a welfare-check on the victim because she had not responded to her family's repeated telephone calls.

When the police arrived at the victim's apartment residence, they knocked on the door but received no response. After several failed attempts to determine if the victim was inside her residence, the police sought entry through apartment management personnel. At this time, police observed defendant inside the apartment and ordered that he come out. Instead, defendant jumped from an apartment window, and pursuit by on-scene officers ensued.

Defendant was apprehended by police. Thereafter, police discovered the victim's body on her bed, wrapped in plastic. The victim died from stab wounds.[2]

Applicant was sentenced to life without parole in the Colorado Department of Corrections for murder, and a concurrent twenty-four year term for burglary.  On direct appeal, the Colorado Court of Appeals rejected six of Petitioner's claims, but agreed that the trial court erred by entering two murder convictions for one victim and ordered the trial court to vacate Applicant's conviction for felony murder.[3]  Applicant filed a petition for rehearing with the state appellate court, which was denied on June 19, 2008.[4]  The Colorado Supreme Court denied Applicant's petition for certiorari review.[5]

Applicant filed a motion for post conviction relief under Colo. Crim. P. Rule 35(c) claiming that he received ineffective assistance of trial and appellate counsel.  The state trial court denied the motion.[6]  The Colorado Court of Appeals affirmed the trial court's

---

[2]*People v. Warrener* (*Warrener I*), 05CA1850 (Colo. App. May 8, 2008) (unpublished) (Doc. # 6-4, at 1-2).

[3]*Id.* at 27-28.

[4]Doc. # # 6-5, 6-6.

[5]Doc. #6-8.

[6]Doc. # 6-11, at 2.

denial of relief, but remanded for correction of the mittimus.[7]  Applicant thereafter

presented two of his claims to the Colorado Supreme Court in a petition for certiorari

review, which was denied.[8]

## II.  HABEAS CLAIMS

Applicant filed *pro se* his Application for a Writ of Habeas Corpus on January 4,

2011.[9]  This Court issued an Order to Answer to Respondents on April 8, 2011.[10]

Respondents filed their Answer on June 15, 2011, after receiving two extensions of

time.[11]  Applicant filed his Traverse on July 14, 2011.[12]

Applicant asserts seven claims in the Application:

(1) the trial court's admission of his statements to the police violated his
Fifth Amendment privilege against self-incrimination and his Fourteenth
Amendment right to due process;

(2) the trial court violated his Sixth Amendment right to confrontation by
limiting cross-examination of his former cell mate regarding the alleged
"reward" received for testifying against Applicant;

(3) the trial court violated his Fourteenth Amendment right to due process
by failing to have Applicant evaluated for competency at the time of trial;

(4) the trial court violated his Sixth Amendment confrontation rights by
admitting the victim's testimonial hearsay about a prior domestic violence
incident;

---

[7]*People v. Warrener (Warrener II)*, No. 09CA1058 (Colo. App. June 24, 2010) (unpublished), Doc. # 6-13.

[8]Doc. #6-15.

[9]Doc. # 1.

[10]Doc. #12.

[11]Doc. #17.

[12]Doc. # 24.

(5) the trial court violated his Fourteenth Amendment due process right to a fair trial by admitting evidence of a prior domestic violence incident;

(6) the trial court violated his Fourteenth Amendment due process right to a fair trial by refusing to instruct the jury on the statutory heat of passion mitigator, and

(7) Applicant's Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to seek a voluntary intoxication instruction and failed to present an insanity defense.

## III.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for writ of habeas corpus may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically

4

different,' 'opposite in character or nature,' or 'mutually opposed.'"
*Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly
established federal law when it identifies the correct governing legal rule
from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at
407-08.  Additionally, we have recognized that an unreasonable
application may occur if the state court either unreasonably extends, or
unreasonably refuses to extend, a legal principle from Supreme Court
precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

A "threshold determination that there is no clearly established federal law is

analytically dispositive in the § 2254(d)(1) analysis." *Id.* at 1017.  This is so because if

the Supreme Court's cases "give no clear answer to the question presented, . . . it

cannot be said that the state court unreasonably applied clearly established federal

law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotations and alterations

omitted).

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective one.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable." *Id.* at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).  Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual

determinations are correct and the Petitioner bears the burden of rebutting the

presumption by clear and convincing evidence.

The Court applies the AEDPA deferential standard of review when a state court

adjudicates a federal issue relying solely on a state standard that is at least as favorable

to the applicant as the federal standard.  *See Harris v. Poppell*, 411 F.3d 1189, 1196

(10th Cir. 2005).  The Court likewise owes deference to the state court's result if the

court reached the merits of the Petitioner's claim, even if the court did not analyze the

claim under federal law.  *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999);

*see also Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (reconfirming "that  § 2254(d)

does not require a state court to give reasons before its decision can be deemed to

have been "adjudicated on the merits.").

Finally, if the state courts failed to adjudicate a federal claim raised by the

Petitioner, the Court consider the claim de novo and the deferential AEDPA standard of

review does not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. PRO SE LITIGANT

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and

other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys."[13] However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[14] A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged.[15] The Applicant's pro se status does not entitle him to an application of different rules.[16]

## C. EXHAUSTION OF STATE COURT REMEDIES AND TIMELINESS

The Court has determined previously that Applicant exhausted state remedies for all of his claims, except for part of claim three.[17]  In their Answer, Respondents continue to maintain that claims one, five and six are not exhausted because Applicant failed to present those claims to the Colorado Supreme Court in his petition for certiorari review.[18]  The Court declines to reconsider its earlier ruling that claims one, five and six are exhausted.

Respondents do not dispute that the Application is timely under the one-year statute of limitations set forth in 28 U.S.C. § 2244.

---

[13]*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[14]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[15]*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[16]*See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

[17]Order dated March 25, 2011(Doc. # 8); Order dated April 5, 2011 (Doc. # 10).  Applicant agreed to dismiss voluntarily the unexhausted portion of claim three.  *Id*.

[18]Doc. #17, at 14-20.

# IV.  ANALYSIS

## A.  ADMISSION OF APPLICANT'S STATEMENT TO THE POLICE

### 1.  Violation of Privilege Against Self-Incrimination

Applicant asserts in his first claim that the trial court's admission of his statements to the police violated his Fifth Amendment privilege against self-incrimination.

The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that law enforcement officers must employ certain procedural safeguards to ensure that a criminal suspect's right against compulsory self-incrimination is protected during an interrogation.  *Id.* at 478-79.  The term "interrogation" for purposes of *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  The test focuses on the perspective of the suspect, not the intent of the police.  *Id.*  However, the intent of the police is not irrelevant.  *Id.* at 301, n.7.  Nonetheless, police may engage in "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" without first providing the *Miranda*  warnings.  *Miranda*, 384 U.S. at 477-78.

Before trial, Applicant filed a motion to suppress his statements made to the police at the time of his arrest.[19]  Following an evidentiary hearing, the trial court denied the motion, finding that no *Miranda* warnings were necessary because the officers' questions did not constitute an interrogation.[20]  On direct appeal, the state appellate court agreed that the protections of *Miranda* did not apply because Applicant's statements were not the product of an interrogation:

> . . . *Miranda* does not apply unless the defendant is in custody and the statements sought to be admitted are the product of police interrogation. *See id.* The parties do not dispute that defendant was in police custody at the time he made statements to the police. Rather, the parties dispute whether defendant's statements were the product of interrogation.

> Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." [*Innis*, 446 U.S. at 301]; *see People v. Gonzales*, 987 P.2d 239, 241 (Colo. 1999). Whether the defendant was subject to interrogation depends on the totality of the circumstances. *See Gonzales*, 987 P.2d at 241.

> General on-the-scene questioning as to facts surrounding a crime or other general questioning in the fact-finding process which enables an officer to determine what has happened and who has been injured is not an interrogation under *Miranda*. *See People v. Denison*, 918 P.2d 1114, 1116 (Colo. 1996); *People v. Baird*, 66 P.3d 183, 188 (Colo. App. 2002).

> Here, the record reveals that Officer Cline responded to a call by the victim's family members to conduct a welfare-check on the victim. Upon arriving at the victim's apartment residence, the police made several attempts to determine whether the victim was, in fact, inside the residence but received no response. Officer Cline testified that while the police were obtaining a key from management personnel to allow entry into the

---

[19]State Court R. vol. 1, at 32-33.  Applicant filed a second motion to suppress, *id.*, vol. 1, at 48-49, that he withdrew at the pretrial suppression hearing.  *Id.*, vol. 6, at 32.

[20]*Id.*, vol. 6, at 103.

victim's residence, he saw a male, later identified as defendant, inside the residence and ordered defendant to come out.

Officer Cline further testified that defendant jumped from a window in the residence and that officers pursued, apprehended, and handcuffed defendant. An officer on the scene then asked defendant whether the victim was in the apartment, and defendant nodded. The officer then asked whether the victim was dead or alive, and defendant shrugged his shoulders. Another officer asked if the victim was okay, and defendant responded, "I think she's dead."

The trial court found, with record support, that the purpose of the officers' on-scene questioning of defendant was to determine the victim's welfare and establish whether the victim was injured and needed aid. The trial court noted that the officers were responding to a welfare-check call and were unable to ascertain whether the victim was inside the residence and, if she was, whether she needed medical attention. The trial court determined that, although defendant was in custody at the time the officers questioned him, their inquiry did not constitute interrogation for purposes of *Miranda* but rather was directed to determining what happened and whether the victim was injured. *See Denison*, 918 P.2d at 1116.

We perceive no error by the trial court. Accordingly, a *Miranda* advisement was not required.[21]

The state appellate court's factual findings are presumed correct on federal habeas review and are supported by the state court record.[22]  Applicant has not rebutted those findings with any clear and convincing evidence to the contrary.[23]  The evidence shows that within a minute of Applicant being placed in handcuffs, Officer Couture asked him if the victim was inside the apartment and if she was dead or alive. At that time, Officer Couture did not know the Applicant's identity.  Officer Cline then asked the Applicant his name and if the victim was "okay," to which the Applicant

---

[21] *Warrener I*, Doc. # 6-4, at 3-5.

[22] *See* State Court  R., vol. 6, at 35-55, 66-71, 98-103.

[23] *See* 28 U.S.C. § 2254(e)(2).

responded "I think she is dead." Under these circumstances, it was reasonable for the

state appellate court to conclude that Officer Couture's question "is she dead or alive,"

was not evocative, but was rather an on-the-scene investigatory attempt to determine

whether the victim was inside the apartment and if she needed medical attention. The

Court therefore finds that the Court of Appeals' determination that Applicant was not

subject to an interrogation, and, therefore, no *Miranda* advisement was required, was

consistent with *Innis* and *Miranda*.

However, even if the admission of Applicant's statements to the police at trial

violated his Fifth Amendment rights, Applicant is not entitled to federal habeas relief

unless the constitutional error had a "substantial and injurious effect or influence" on the

jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted).

Put differently, the constitutional violation must have "have resulted in 'actual prejudice'"

*Brecht*, 507 U.S. at 637. At Applicant's trial, police officers testified that they entered

the victim's apartment in response to a welfare check call placed by the victim's father,

minutes after the Applicant fled the apartment through a window, and found the victim's

body inside a bedroom, wrapped in plastic and covered with a sheet.[24] Baby powder

was spread over the victim's body.[25] The victim had suffered stab wounds to her chest

and back and had defensive injuries to her hands.[26] Police found clothing and bedding

in the washing machine and a knife in the kitchen sink. Baby powder seized from the

---

[24]State Court R. vol. 10, at 127-136, 143-149.

[25]*Id.* at 149.

[26]*Id.* at 72, 77.

apartment bore the Applicant's fingerprints.[27]   A large area of blood on the carpet in the bedroom where the victim was found was covered in detergent.[28] Applicant's fingerprints were found on a carpet cleaning machine that also contained the victim's blood.[29]  Applicant's cell mate during his pretrial detention testified that Applicant confessed the following details about the crime, which largely corroborate the other evidence presented at Applicant's trial: he killed a woman named "Karen" who he had been seeing romantically with a big knife he found in her kitchen and placed her body in plastic bags; he then cleaned the knife and the apartment with cleaning supplies and tried to escape through a bathroom window when the police arrived at the front door.[30]

Based on the evidence of Applicant's guilt presented at trial, the Court finds that the additional introduction of Applicant's statement to the police that the victim was dead inside the apartment, without his admission to being the perpetrator, did not make it more likely in the jurors' minds that Applicant committed the crimes than the evidence already before them.  As such, any constitutional error in admitting the evidence did not change the outcome of Applicant's trial and does not warrant federal habeas relief.

---

[27] *Id.* vol. 10, at 194, 214; vol. 12 at 201, 290-91.

[28] *Id.* vol. 10, at 147-49 .

[29] *Id.*, vol. 12, at 198, 291.

[30] *Id.* vol. 11, at 136-142.

### 2.  Violation of Fourteenth Amendment Due Process Rights

On direct appeal of his conviction, Applicant also asserted that the trial court's admission of his statements to the police violated his Fourteenth Amendment due process rights because the statements were not voluntary.[31]

Due process prohibits conviction of a defendant based, "in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378 U.S. 368, 376 (1964).  Statements are voluntary if they are the product of an individual's free and rational choice. *Greenwald v. Wisconsin*, 390 U.S. 519, 521 (1968).  The question is whether the individual's will has been overborne.  *Townsend v. Sain*, 372 U.S. 293, 307 (1963).  To be voluntary, a statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."  *Brady v. United States*, 397 U.S. 742, 753 (1970).

In making the voluntariness determination, the trial court must consider the totality of the circumstances surrounding the defendant's statement.  *Clewis v. Texas*, 386 U.S. 707, 708 (1967).  The burden is on the prosecution to prove by a preponderance of the evidence that the statement was made voluntarily.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972).  "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'"  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

At the pretrial suppression hearing, the state trial court ruled that, under the totality of the circumstances, there was nothing coercive which overbore Applicant's will

---

[31] *See* Doc. #6-1, at 13-15.

13

not to answer the officers' questions.[32]   The trial court found that the officers' method of questioning was brief and directed to determining the welfare of the victim.[33]   The trial court observed that Applicant "was probably sweating, having run, jumped out of the building, run across the street and tried to climb a 6-foot fence before he was apprehended."[34]   Relying on the officers' testimony, the court found no evidence that Applicant was injured during the seizure.   The court further found that Applicant was not intoxicated or impaired, and that Applicant responded to the officers' questions appropriately.[35]  The trial court denied the motion to suppress, stating: "I don't find anything coercive about this. Even though he was handcuffed at that time, he was kneeling on the street, at that point in time he was asked questions. There were no guns drawn."[36]

On direct appeal, the state appellate court determined that the trial court's findings of fact were supported by the record and concluded that the trial court did not err in admitting the Applicant's statements at trial.[37]   Again the state court's factual findings are presumed correct in this federal habeas proceeding.   This Court agrees that those findings are supported adequately by the state court record.   Applicant has not pointed to any clear and convincing evidence to show that his will was somehow overborne by the police or that the police engaged in any coercive or other improper

---

[32]State Court R. vol. 6, at 98-105.

[33]*Id.* at 104.

[34]*Id.*

[35]*Id.* at 99, 104.

[36]*Id.* at 105.

[37]*Warrener I*, Doc. # 6-4, at 6-7.

conduct.  Accordingly, the Court finds that the state appellate court's determination of

Applicant's due process claim was reasonable in light of the evidence presented in the

state court proceeding and comports with the Supreme Court standards discussed

above.  Applicant therefore cannot prevail on his first claim for relief.

## B.  SIXTH AMENDMENT CONFRONTATION RIGHT - CROSS-EXAMINATION

Applicant asserts in claim two that his Sixth Amendment right to confront adverse

witnesses was violated when the trial court limited cross-examination of his former cell

mate regarding the alleged "reward" he received for testifying against Applicant.

The Confrontation Clause of the Sixth Amendment guarantees the right of an

accused in a criminal prosecution "to be confronted with the witnesses against him."

U.S. Const. amend. VI.  "The main and essential purpose of confrontation is to secure

for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308,

315-316 (1974) (internal quotation marks omitted).  The constitutionally protected right

of cross-examination includes exposure of a witness' motivation in testifying.  *Id.* at

316-317.  However, the Confrontation Clause does not prevent the trial court from

imposing any limits on defense counsel's inquiry into the potential bias of a prosecution

witness.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Trial judges have wide

discretion "to impose reasonable limits on such cross-examination based on concerns

about, among other things, harassment, prejudice, confusion of the issues, the witness'

safety, or interrogation that is repetitive or only marginally relevant."  *Id.*  "[T]he

Confrontation Clause guarantees an opportunity for effective cross-examination, not

cross-examination that is effective in whatever way, and to whatever extent, the defense

15

might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in

original).   However, a trial court may violate a defendant's confrontation rights by

prohibiting all inquiry into an event that "a jury might reasonably have found furnished

the witness a motive for favoring the prosecution in his testimony."   *Van Arsdall*, 475

U.S. at 679.

Applicant contends that the trial court restricted improperly his cross-examination

of a former cell mate regarding the witness's motive for  testifying against Applicant at

trial.   On direct appeal, the state appellate court found that the Applicant was able to

explore on cross-examination the witness' potential motive for testifying based on the

following information elicited by defense counsel:

> • The witness, who had sustained several felony convictions, was familiar
> with the criminal justice system and knew about plea bargains.
>
> • When he met defendant, the witness was charged with a class three
> felony that could have yielded a sentence of ten to thirty-two years.
> Additionally, the witness was potentially subject to habitual criminal
> charges. In essence, the witness was "looking at a whole bunch of time."
>
> • The witness met with police officers and told them that he could provide
> information about his own case (possibly to identify other participants).
> The witness also talked about defendant's case and suggested that, if the
> police needed more information, the witness could get more.
>
> • After meeting with the police, the witness was allowed to plead guilty to a
> class six felony so that he could receive a sentence of fifteen months.[38]

The Colorado Court of Appeals rejected Applicant's argument that the trial court

erred in refusing to allow him to elicit the additional fact that "[i]n September 2004,

before meeting with police, the witness had waived his right to a preliminary hearing; at

---

[38] *Warrener I*, Doc. # 6-4, at 9-10.

that time, the prosecution had offered to allow the witness to plead guilty to a class five

felony if he provided information about his own case."[39]  The state appellate court

determined that this additional information would have necessitated further evidence

from the prosecution–such as the testimony of the prosecutor who had handled the

witness's case–to rebut the defendant's line of reasoning, which would have been "of

marginal probative value, time consuming, and potentially misleading."[40]  The Colorado

Court of Appeals concluded that Applicant was allowed sufficient opportunity to explore

the witness's motive for testifying and found no abuse of discretion in the court's

ruling.[41]

   Again, the state appellate court's factual findings are afforded a presumption of

correctness on federal habeas review.  The state court record demonstrates that,

although the trial court placed some limitations on counsel's cross-examination, counsel

was able to explore effectively the witness' possible motive and bias for testifying as a

prosecution witness.[42]  Applicant's contention on direct appeal that counsel should have

been allowed to inquire about the prosecutor reserving the right to bring habitual

criminal charges against Applicant's cell mate at the time of his preliminary hearing

waiver was not supported by the evidence presented to the state trial court, and was

largely superfluous given the witness' testimony that he was facing a prison sentence of

up to thirty-two years on his current charge.  Applicant does not offer any other

---

[39]*Id.* at 11.

[40]*Id.*

[41]*Id.*

[42]State Court R. vol. 11, at 154-167, 171-73.

evidence to support his claim that the scope of his cross-examination of the cell mate

was restricted improperly on the issue of motive and potential bias.  As such, the Court

finds that the Court of Appeals' resolution of Applicant's second claim was a reasonable

application of  controlling Supreme Court law.  Applicant therefore is not entitled to

federal habeas relief.

## C.  FAILURE TO DETERMINE APPLICANT'S COMPETENCY FOR TRIAL

For his third claim, Applicant asserts that his Fourteenth Amendment right to due

process was violated when the trial court failed to have him evaluated for competence

to stand trial.  During the trial court's advisement[43] concerning Applicant's right to testify,

the following colloquy occurred:

Q [Court]: Now, when you say – you just said that Mr. Warrener is actually under the influence of certain medications. What I want to find out is again, and maybe I'd better inquire, I don't want that staining on the record here. Mr. Warrener, I understand that you've taken some medications that you've identified earlier; is that right?

A [Applicant]: Yes, sir.

Q: Do you feel that either of those drugs, and perhaps in combination that you've taken, are interfering with your thinking process, your thought process?

A: It's possible, I'm not sure.

Q: Well, before you told me that even though you were taking those drugs –

A: I don't believe so.

Q: Pardon me?

---

[43]The subject came up during the advisement required by *People v. Curtis*, 681 P.2d 504 (Colo. 1984), after the trial court asked whether Applicant was under the influence of any alcohol, drugs, or medications. (Doc. # 6-2, at 20, 23).

A: I don't believe that they are.

Q: Okay. Well are you having any trouble or difficulty understanding what I'm saying to you?

A: No, sir.

Q: And when I went through before and read to you your right to choose to testify, you told me you understood that, correct?

A: Yes, sir.

Q: Do you have any other questions you want to ask me about the right to choose to testify?

A: No, sir.[44]

After Applicant reassured the trial court that he understood his right to testify and that he had twice discussed this decision with his attorney, he disclosed that the medications had not "been helping [him] too much" and claimed that he "hear[d] voices" and "hallucinate[d]," and had been diagnosed with "post traumatic stress syndrome, bipolar with psychosis, paranoi[d] delusions and severe anxiety and manic depressive disorder."[45]

The following exchange then occurred:

Q [Court]: Okay. Now, understand again as I've said, this is a stressful time and a stressful decision, but it's a decision you have to make. Do you understand that?

A [Applicant]: Yes. Yes, sir.

Q: Do you at this time feel that in any way because of the medication, the Geodon or the Wellbutrin that you're just unable to make this decision?

---

[44]State Court R. vol. 13, at 113-14.

[45]*Id.* at 115-16.

A: No, sir.

Q: Okay. So you feel that notwithstanding taking these medications that are treating these conditions, you understand what you're doing, correct?

A: Yes, sir.

Q: And you're making a voluntary decision; is that right?

A: Yes, sir.

Q: And you have no other questions about your right to choose to testify or not to testify, correct?

A: No, sir.

Q: Okay. Thank you.[46]

Based on those responses, the trial court found that "although [Applicant is] taking these medications it [has] not interfered with his ability to [understand and] appreciate what [his] rights are, and to make a knowing, voluntary and intelligent waiver"of his right to testify.[47]

Due process requires a trial court to hold a competency hearing when the evidence before it raises a "bona fide doubt" about whether a defendant is mentally competent.  *Pate v. Robinson*, 383 U.S. 375, 385 (1966).  A bona fide doubt exists if "a reasonable judge should have experienced doubt" about the defendant's competency. *McGregor v. Gibson*, 248 F.3d 946, 954 (10th Cir. 2001); *Nguyen v. Reynolds*, 131 F.3d 1340, 1346 (10th Cir. 1997) (bona fide doubt requires defendant to present facts

---

[46]*Id.* at 117-18.

[47]*Id.* at 118.

"sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt concerning his mental capacity") (internal quotation omitted).

In a habeas proceeding, the petitioner must show the trial court "fail[ed] to give proper weight to the information suggesting incompetence which came to light during trial." *McGregor*, 248 F.3d at 955 (citing *Drope v. Missouri*, 420 U.S. 162, 179 (1975)); *see also Valdez*, 219 F.3d at 1240 (petitioner must show that "the trial court ignored evidence, which viewed objectively, raised a bona fide doubt regarding [petitioner's] competency to stand trial.").  Factors relevant to determining a defendant's competence include evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.  *Drope*, 420 U.S. at 180.

The state appellate court resolved Applicant's claim as follows:

> The record demonstrates that although defense counsel advised the trial court that defendant was under the influence of certain medications, defense counsel did not indicate that defendant was incompetent within the meaning of [COLO. REV. STAT. ] § 16-8-102(3)]  . . . Defense counsel did not assert that defendant did not understand the nature of the proceedings or lacked a present ability to consult with his counsel. Nor did defense counsel request further inquiry into defendant's competence to stand trial or request a competency hearing.

> The record does not support a finding that defense counsel's representation to the court that defendant was under the influence of medication and defendant's responses to inquiry by the trial court raised a "bona fide doubt" as to defendant's competence such that the trial court was required to suspend proceedings and order a competency hearing. [state case law citation omitted].  Accordingly, we conclude the trial court did not abuse its discretion in determining defendant competent for trial and proceeding without a competency hearing.[48]

---

[48]*Warrener I*, Docket  #6-4, at 14-15.

21

The Court finds that the state appellate court's determination was not unreasonable in light of the evidence presented to the state trial court.  Applicant did not offer any objective or medical evidence of his incompetency during the trial proceeding, and particularly during the court's advisement of his right to testify in his own defense. Defense counsel never questioned Applicant's competency during the trial proceeding and did not contradict Applicant's statements to the trial court that he understood his Fifth Amendment right to testify and waived that right voluntarily.  In short, there nothing in the record to support Applicant's belated argument that he was not competent during the trial proceeding.  Accordingly, the Court of Appeals' determination of Applicant's claim was consistent with federal law and Applicant is not entitled to federal habeas relief.

## D.  SIXTH AMENDMENT CONFRONTATION RIGHT - ADMISSION OF HEARSAY

Applicant asserts in claim four that his Sixth Amendment confrontation right was violated when the trial court admitted, through a police officer's testimony, the victim's hearsay statements made to the officer about a prior domestic violence dispute involving the Applicant.  The police officer testified at trial that approximately one year prior to the victim's death, he responded to a domestic disturbance call and met the reporting party (the victim) at a King Soopers parking lot.[49]  The victim told him that her boyfriend (Applicant) was angry with her because she had left the apartment to get food and did not return with any cigarettes for him.[50]  According to the victim, an

---

[49]State Court R. vol. 11, at 20.

[50]*Id.* at 22.

argument ensued at the victim's apartment; Applicant followed the victim into the bathroom and pushed her backwards, causing her to hit her head on the towel rack; the victim then left the apartment and called the police.[51]

Applicant moved to exclude the evidence before trial.  The trial court ruled that because Applicant pled guilty to harassment and domestic violence based on the prior incident, he knowingly, voluntarily and intelligently waived his right to confront and cross-examine the victim with respect to her hearsay statements for purposes of the pending murder charges.[52]

The trial court's admission of an unavailable witness's testimonial statements against a defendant at trial violates the defendant's confrontation rights when the defendant has no opportunity to cross examine the witness. *Crawford v. Washington*, 541 U.S. 36 (2004).  The Supreme Court has not provided an exhaustive classification of all conceivable statements that are testimonial or non testimonial in nature.  In *Davis v. Washington*, 547 U.S. 813 (2006), however, the Supreme Court recognized that statements are testimonial when the circumstances of a police interrogation "objectively indicate that there is no . . . ongoing emergency, and that the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

A defendant may forfeit his confrontation rights by wrongdoing.  *Crawford*, 541 U.S. at 62 (citing *Reynolds v. U.S.*, 98 U.S. 145, 158 (1878) ("The Constitution does not

---

[51] *Id.* at 22-23.

[52] *Id.* vol. 8, at 26-29.

guarantee an accused person against the legitimate consequences of his own wrongful acts)).

On appeal, the Colorado Court of Appeals determined that the trial court erred in concluding that Applicant's guilty plea to the harassment offense in 2003 waived his right to confront the victim regarding the use of her hearsay statements against him in the pending murder case.[53]  The state appellate court further acknowledged the potential applicability of the doctrine of forfeiture by wrongdoing, but recognized that it had not been demonstrated by a preponderance of the evidence, as required by Colorado law.[54]  The Colorado Court of Appeals therefore concluded that, to the extent a Confrontation Clause violation occurred, the constitutional error was harmless beyond a reasonable doubt.[55]

Under *Chapman v. California*, 386 U.S. 18, 24 (1967), a constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Here, in light of the evidence offered by the prosecution in support of Applicant's guilt, the Court concludes that the state appellate court's holding was not an unreasonable application of *Chapman's* federal harmless error standard.  *See Spears v. Mullin*, 343 F.3d 1215, 1233 n.14 (10th Cir. 2003) (instructing that when "there is a state-court-*Chapman* determination to defer to under 28 U.S.C. § 2254(d)," the court must decide "whether the state court's finding of harmless error was contrary to or an unreasonable application of *Chapman*").  The prior

---

[53] *Warrener* I, Doc. #6-4, at 19.

[54] *Id.* at 20.

[55] *Id.* at 21.

act of domestic violence described by the victim's hearsay statement and admitted through the testimony of a police officer, occurred eleven months prior to the victim's death.  The police officer testified that the victim did not suffer any significant injuries from the incident, unlike the violent stabbing that occurred almost a year later and was the basis for the murder trial.  Furthermore, the victim's hearsay statement was not the only evidence of Applicant's prior relationship with the victim.  A witness who lived in the same apartment building as the victim testified that during the late Spring of 2004, he talked to Applicant several times outside the victim's apartment and that Applicant told the witness that he was outside because the victim had "asked him to leave."[56] Moreover, as discussed in claim one, the evidence at trial amply supports the guilty verdict, without the admission of the hearsay statement of the victim.  Accordingly, the Court finds that the state appellate court's determination that any Confrontation Clause error at Applicant's trial was harmless beyond a reasonable doubt was consistent with *Chapman*.  Applicant therefore cannot prevail on his fourth claim.

## E.  ADMISSION OF PRIOR DOMESTIC VIOLENCE INVOLVING THE VICTIM

For his fifth claim, Applicant asserts that his Fourteenth Amendment due process right to a fair trial was violated when the trial court admitted evidence of a prior domestic violence incident involving Applicant and the victim.

At a pretrial motions hearing, the trial court ruled that evidence of a prior domestic violence incident involving the Applicant, that occurred approximately one year before the homicide, during which Applicant pushed the victim inside her bathroom and

---

[56]*Id.*, vol. 11, at 13-16.

caused her to hit her head on a towel rack, was admissible under state evidentiary rules.[57] The state appellate court affirmed the trial court's ruling on direct appeal.[58]

This federal habeas court does not review the state court's rulings of state evidentiary law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Absent a showing that the admission of evidence violated a specific constitutional right, a federal habeas court will not disturb the state court's evidentiary rulings unless the admission of the evidence was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (internal quotation marks omitted); *see also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).  Even if the admission of the evidence was of constitutional magnitude, Applicant cannot prevail in this habeas proceeding unless he shows that the evidence had a substantial and injurious influence on the jury's verdict.  *See Brecht*, 507 U.S. at 637.

The prior domestic violence incident is also the subject of Applicant's confrontation claim asserted in claim four.  The Court has already determined that the admission of the evidence did not actually prejudice him at trial.  Applicant cannot prevail on his fifth claim for the same reason that his fourth claim fails.

---

[57] *Id.*, vol. 8, at 32-34.

[58] *Warrener I,* Docket # 6-4, at 24-25.

## F.  FAILURE TO GIVE JURY INSTRUCTION

In claim six, Applicant asserts that the trial court violated his Fourteenth Amendment right to a fair trial by refusing to instruct the jury on Colorado's heat of passion mitigator.

The state trial court instructed the jury on the charged offense of first degree murder–after deliberation and the lesser included offense of second degree murder.[59] The trial court rejected Applicant's request to instruct the jury on the heat of passion mitigator, finding that there was no evidence to support it.[60]

Under Colorado law, provocation is not an element of second degree murder, but acts as a mitigating factor, lowering the offense from a class 2 felony to a class 3 felony where:

> (1) the act causing the death was performed upon a sudden heat of passion; (2) caused by a serious and highly provoking act of the intended victim; (3) affecting the defendant sufficiently to excite an irresistible passion in a reasonable person; and (4) there was an insufficient interval of time between the provocation and the killing for the voice of reason and humanity to be heard.

*See* § 18-3-103 (3), C.R.S. (2010).

As an initial matter, the Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in a non-capital case. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980); *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).  As such, claim six fails to clear the first tier of the AEDPA standard of review.  *See Wright*, 552 U.S. at 126; *House*, 527 F.3d at 1017.

---

[59]State Court R. vol. 1, at 260, 264.

[60]*Id.*, vol. 13, at 86.

27

Even if Applicant's claim does not founder at the outset, it faces a high hurdle.
"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in
federal habeas corpus proceedings, unless they are so fundamentally unfair as to
deprive petitioner of a fair trial and to due process of law." *Nguyen*, 131 F.3d at 1357
(internal quotation marks and citation omitted); *see also Maes v. Thomas*, 46 F.3d 979,
984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas
proceeding on the basis of erroneous jury instructions when the errors had the effect of
rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  Thus, a
habeas petitioner's burden in attacking a state court judgment based on a refusal to
give a requested jury instruction is onerous because "'[a]n omission, or an incomplete
instruction, is less likely to be prejudicial than a misstatement of the law." *Tyler v.
Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting *Henderson v. Kibbe*, 431 U.S.
145, 155 (1977)).

To determine whether the state trial court's refusal to instruct the jury concerning
heat of passion mitigation violated Applicant's federal constitutional right to due process,
the Court looks to Colorado law to evaluate whether, under state law, Applicant was
entitled to such an instruction.  *Tyler*, 163 F.3d at 1227.

In this case, however, the Colorado Court of Appeals did not decide whether
Applicant was entitled to the heat of passion instruction, but concluded that:

> . . . because the jury convicted defendant on the greater offense, any error
> by the trial court in failing to give a heat of passion instruction was
> harmless beyond a reasonable doubt. *See, e.g., Mata-Medina v. People*,
> 71 P.3d 973 (Colo. 2003)(noting that where a jury receives an
> intermediate offense instruction but convicts on a greater offense, failure

to give the lesser offense instruction is neither inherently prejudicial nor a denial of a fair trial).[61]

The Court finds that the state appellate court's determination of Applicant's claim was not contrary to or an unreasonable application of clearly established federal law. The jury convicted Applicant of first degree murder–after deliberation and rejected the charge of second degree murder.  The heat of passion instruction was only relevant to the offense of second degree murder.  Because the jury found that the prosecution proved all the elements of first degree murder–after deliberation beyond a reasonable doubt, there is no possibility that Applicant was prejudiced by the trial court's failure to instruct on the heat of passion mitigator.  The trial court's failure to instruct the jury on the heat of passion mitigator thus did not render Applicant's trial fundamentally unfair and he cannot prevail on his sixth claim.

## G.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

For his seventh claim, Applicant asserts that he was deprived of his Sixth Amendment right to effective assistance of trial counsel when counsel did not seek a voluntary intoxication instruction and failed to present an insanity defense.

To prevail on his claim of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have

---

[61] *Warrener I*, Doc. # 6-4, at 25-27.

been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914

(10th Cir. 1999) (internal quotations omitted).  Prejudice exists when there is a

reasonable probability that, but for counsel's defective representation, the result of the

proceeding would have been different. *Strickland*, 466 U.S. at 693.  The Court need not

address both prongs of the *Strickland* inquiry if Applicant's claim fails on one. *Id.* at 697.

### 1.  Voluntary Intoxication Instruction

The state appellate court applied the *Strickland* standard and rejected Applicant's

ineffective assistance of counsel claim based on the following reasoning:

> Defendant argues that, because he had been using methamphetamine
> prior to and after the killing, trial counsel should have sought a voluntary
> intoxication instruction in order to allow the jury to find that he did not have
> the specific intent to kill the victim. We are not persuaded.

> Evidence of voluntary intoxication may be offered by the defendant when it
> is relevant to negate the existence of intent to commit a specific intent
> crime, such as first degree murder - after deliberation or second degree
> burglary. *See* §§ 18-1-804(1), 18-3-102(1)(a), 18-4-203(1), C.R.S. 2009.
> Self-induced intoxication, however, is not a defense to second degree
> murder. *See* § 18-3-103(2), C.R.S. 2009.

> Here, trial counsel's theory of defense was that an alternate suspect killed
> the victim. Defendant argues that counsel "abandoned" this defense by
> asking for an instruction on second degree murder and the heat of passion
> mitigator to that offense. *See* § 18-3-103(1), (3)(b), C.R.S. 2009. However,
> it appears counsel made a strategic choice to pursue a theory of reduced
> culpability, i.e., murder committed in a heat of passion, in the event the
> jury did not accept the alternate suspect defense. A choice by counsel to
> pursue voluntary intoxication essentially would have amounted to an "all or
> nothing" strategy because the jury would have had to choose between first
> degree murder and outright acquittal.

> More importantly, the trial evidence of defendant's alleged intoxication
> indicated that he ingested methamphetamine after the victim was killed
> and did not support a conclusion that he was intoxicated at the time of the
> killing. The only evidence of methamphetamine use prior to the murder
> was testimony from another jail inmate who "got the impression"
> defendant had been taking methamphetamine for three days before the

murder, but defendant told him he took methamphetamine after he discovered the body. And, the record does not support defendant's assertion that he was sent to the hospital for a drug overdose after he was arrested.

Therefore, as the majority of the evidence showed that defendant became voluntarily intoxicated after the killing, we cannot say that counsel's strategic choice to pursue an alternate theory to allow the jury a choice between first or second degree murder fell below the standard of a competent defense attorney. *See Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); . . . .[62]

Applicant offers no evidence to rebut the state appellate court's factual findings which are supported by the state court record.[63]  Because the only evidence that Applicant was intoxicated before the killing was the equivocal testimony of his former cell mate, the state appellate court determined reasonably that trial counsel's choice to pursue an alternative defense theory was sound trial strategy.  "[W]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690); *see also Fox v. Ward,* 200 F.3d 1286, 1296 (10th Cir. 2000) (decisions based on trial strategy only rise to the level of ineffective assistance of counsel if they are "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy.") (quotation and alteration omitted).  Further, counsel's failure to seek a voluntary intoxication instruction was reasonable because the instruction would have conflicted with his trial strategy to pursue a theory of reduced

---

[62]*Warrener II*, Docket # 6-13, at 5-6.

[63]*See* State Court R. vol. 14, at 36-38, 59.

culpability – i.e., murder committed in a heat of passion. *See Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998).   Although counsel's chosen strategy was ultimately unsuccessful, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.   The Court finds that the state appellate court's determination was reasonable under *Strickland* and Applicant therefore cannot prevail on his claim that trial counsel was constitutionally ineffective in failing to pursue a voluntary intoxication defense.

### 2. Insanity Defense

Applicant also asserts that he was deprived of his Sixth Amendment right to effective assistance of trial counsel when counsel failed to present an insanity defense.

The Colorado Court of Appeals again applied the *Strickland* standard and rejected Applicant's claim based on the following reasoning:

> Defendant also argues that trial counsel should have asked the court to order a mental health examination prior to trial to explore the possible defense of insanity or impaired mental condition. The trial court concluded that this issue had been raised and resolved on direct appeal. We conclude the court correctly denied this claim, although we base our conclusion on slightly different grounds. *See People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006).
>
> Defendant raised a similar contention on direct appeal when he argued that he should have received an evaluation of his competency to stand trial during his mid-trial advisement regarding his right to testify. The division rejected the argument, finding that the record did not support that conclusion. *Warrener I*.
>
> In his Crim. P. 35(c) motion, defendant alleged that he was not responsible for his actions because he was taking a psychotropic drug and on methamphetamine at the time the victim was killed. As noted above,

however, the trial evidence did not substantiate defendant's claim that he took methamphetamine before the murder. Further, the circumstances surrounding his arrest and subsequent questioning by the police, which defendant does not dispute, fail to raise a reasonable inference that defendant was either insane or suffering from an impaired mental condition at the time of the crimes. Defendant does not otherwise allege facts that would establish his entitlement to either of these defenses. *See* § 16-8-101.5(2)(b), C.R.S. 2009 ("mental disease or defect" must not be attributable to voluntary ingestion of any psychoactive substance).

Therefore, defendant failed to demonstrate that counsel was ineffective in this regard.[64]

Again, the state appellate court's factual findings are accorded a presumption of correctness in this federal habeas proceeding. The Court has reviewed the state court record and relevant portions have been cited throughout this decision. Nothing in the state court proceedings would have reasonably required a prudent attorney to pursue a psychiatric or competency evaluation of Applicant prior to trial or during the trial proceeding. *See Mayes v. Gibson*, 210 F.3d 1284, 1289 n. 3 (10th Cir. 2000) (counsel's failure to obtain psychiatric evaluation did not amount to deficient performance where nothing in record would have caused a reasonable attorney to believe that petitioner's mental condition was a potentially mitigating factor); *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1236 (10th Cir. 2002) ("When counsel declines to present a defense for which there is no arguable basis, in law or in fact, counsel's performance is not deficient."). Applicant has not pointed to any clear and convincing evidence that would have prompted counsel to inquire as to whether he suffered from a mental disease or defect within the meaning of C.R.S. § 16-8-101.5(1)(b). The Court therefore finds that

---

[64] *Warrener II,* Doc. # 6-13, at 7-8.

the state appellate court's resolution of Applicant's claim comports with *Strickland*.

Applicant cannot prevail on his seventh claim.

## V.  ORDER

Accordingly, it is

ORDERED that the Application For A Writ Of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (Doc. # 1) is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that a certificate of appealability shall not issue because

Applicant has not made a substantial showing of the denial of a constitutional right.[65]

DATED this __30th__ day of November, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[65]28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).